UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MINGO THAMES, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-263-MGG |
| JAMES, et al., | |
| Defendants. | |

OPINION AND ORDER

Mingo Thames, a prisoner without a lawyer, is proceeding in this case "against Sergeant James, Sergeant Cochran, and Officer Evans in their individual capacities for compensatory and punitive damages for failing to protect him from an attack by his roommate on May 12, 2019, in violation of the Eighth Amendment [.]" ECF 11 at 5. The defendants filed a motion for summary judgment. ECF 76. Thames filed a response and the defendants filed a reply. ECF 94, 96. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v.*

*Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Thames began sharing a cell with inmate Nicholas May around April 2019. ECF 81-1 at 23-24. During that time, Thames slept during the day and worked a laundry job overnight between approximately 10 p.m. and 4 a.m. *Id.* at 39-40. Thames and May got along "good at first" and did not have any conflicts. *Id.* at 24. Eventually, Thames began to learn things about May, including that he used drugs, was sexually attracted to men, and had previously been investigated for violations of the Prison Rape Elimination Act. *Id.* at 25, 28-29. Thames did not consider May a threat at that time, as he had learned May was attracted to small white men, while Thames is black and worked out. *Id.* at 28-31. At that point, Thames thought May was "weird," but was not scared of him. *Id.* at 40-41.

The first event that caused Thames to become concerned about May occurred on either Friday, May 10, or Saturday, May 11. ECF 81-1 at 44, 48. While Thames was sleeping on the bottom bunk, May descended from the top bunk to use the cell toilet, which was blocked by a curtain. *Id.* at 44-45. Thames got an uneasy feeling and felt like May was watching him sleep. *Id.* The second time this happened, Thames focused on May with one eye open and saw him with his hand in his jumpsuit. *Id.* Thames believed

2

May was masturbating while watching him sleep. *Id.* The third time this happened, Thames confronted May, asking "what are you doing?" *Id.* at 45. May responded by asking Thames if he wanted to fight, and Thames said "no, man, I don't want to fight you." *Id.* at 45-46. Thames immediately reported this incident to Officer Evans and another correctional officer, and those correctional officers informed Sgt. James and Sgt. Cochran of the incident. *Id.* at 46-51, 61-62.

     Sgt. James attests he first learned Thames was not getting along with his cellmate and was requesting a cell change on May 10, 2019, when that information was relayed to him by Officer Evans. ECF 76-3 at 1-2. Sgt. James spoke with both Thames and May at their cell, and both inmates stated they wanted a cell change. *Id.* at 2. Cell changes cannot be accommodated on a whim, as it is something dorm counselors must spend significant time considering. *Id.*; ECF 76-2 at 2. Specifically, cell moves involve moving multiple prisoners, and dorm counselors are better equipped to match cellmates as they are familiar with the prisoner's backgrounds and the particular reasons some will or will not make appropriate cell matches. *Id.* Because dorm counselors are not present on the weekends, weekend staff are not permitted to move prisoners. *Id.*

     After speaking with Thames and May, Sgt. James went to a captain and reported that Thames and May were not getting along and wanted a cell change. ECF 76-3 at 2. The captain responded that if either inmate had a serious concern that warranted an immediate cell change, he would have to put his request in writing. *Id.* Sgt. James returned to Thames and told him he needed to put his request in writing and include details about why he wanted an immediate cell change, but Thames declined to put his

3

request in writing. *Id.* at 2-3. Because Thames would not put his request in writing, Sgt. James told him he would have to wait until Monday for a dorm counselor to facilitate a cell change. *Id.* at 3. Sgt. James also told Thames he could get him out of his cell for the night to do laundry duties, which would give him more time away from May. *Id.* Thames was not otherwise assigned to perform laundry duty that weekend. *Id.* Thames seemed comfortable with the plan to pull him out of his cell to perform laundry services overnight, and indicated it was a good option to defuse the situation with May. *Id.* Sgt. James released Thames from his cell to perform laundry duties the night of May 11, 2019, and planned to do the same on May 12, 2019. *Id.* Unfortunately, before Thames was released for laundry duties on May 12, May attacked him in his cell by throwing hot water on his face, pinning him down, and striking him. ECF 76-3 at 3-4; ECF 81-1 at 51-52. Correctional officers deployed OC spray to separate the inmates and escorted Thames to the infirmary for medical treatment. ECF 76-3 at 4; ECF 81-1 at 52-55. Because neither party disputes these facts, the court accepts them as undisputed.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Deliberate indifference is "something

4

approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prevail, the plaintiff must establish that the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756.

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

The defendants argue they are entitled to summary judgment because they were not deliberately indifferent to Thames' safety, as they did not know Thames was in immediate danger, did not have the authority to transfer Thames out of his cell that weekend, and offered alternative solutions which Thames declined. ECF 77 at 6-11. In his response, Thames argues the defendants were deliberately indifferent for keeping

5

him in his cell with May over the weekend because May had a history of inappropriate and aggressive behavior.[1] ECF 94.

Here, there is no evidence by which a reasonable jury could conclude the defendants acted with deliberate indifference to Thames' health or safety. Specifically, even assuming the defendants knew of a specific threat to Thames' safety, there is no evidence the defendants acted with a "total unconcern" to that threat. Rather, it is undisputed the defendants responded to Thames' concerns about his cellmate by speaking with Thames and May, reporting Thames' concerns to their superiors, informing Thames he needed to put his request in writing if he wanted an immediate cell change, and allowing Thames to leave overnight for laundry duty until the dorm counselors returned on Monday to facilitate a cell change. It is undisputed the defendants had no authority to change Thames' cell over the weekend absent the dorm counselors, and that Thames declined to submit a written request for a cell change to facilitate an emergency transfer. Because the undisputed facts show the defendants responded reasonably to Thames' concerns and offered viable solutions, no reasonable jury could conclude the defendants exhibited a total unconcern for his welfare or a "conscious, culpable refusal" to prevent harm. Summary judgment is therefore warranted in favor of the defendants.

For these reasons, the court:

---

[1] Thames states that if he had more time, he would have requested May's inmate classification file and complete incarceration history. ECF 94 at 2. But this information would not help him because the defendants were not involved in placing the two men in the same cell, and May's history is relevant only as far as the defendants were aware of it when they were making decisions about how to deal with the conflict between the two men. There is no indication that any defendant would have access to this information.

6

(1) GRANTS the defendants' summary judgment motion (ECF 76); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Mingo Thames.

SO ORDERED on August 16, 2023.

                                                          s/ Michael G. Gotsch, Sr.
                                                          Michael G. Gotsch, Sr.
                                                          United States Magistrate Judge